UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
COMMISSIONERS OF THE STATE INSURANCE
FUND,

               Plaintiff,

          -against-

HAINESPORT TRANSPORTATION GROUP LLC,

              Defendant.
-----------------------------------------------------------------x
HAINESPORT TRANSPORTATION GROUP LLC,

             Third-Party Plaintiff,

          -against-

DOING IT RIGHT TECHNOLOGIES LLC; DJM
TRANSPORT, LLC; and RTL INDUSTRIES LLC,

             Third-Party Defendants.
-----------------------------------------------------------------x

**MEMORANDUM AND ORDER**
23-CV-1169 (OEM) (JAM)

ORELIA E. MERCHANT, United States District Judge:

      Plaintiff Commissioners of the New York State Insurance Fund ("NYSIF" or "Plaintiff")
brings this action against defendant Hainesport Transportation Group LLC ("Hainesport" or
"Defendant"), seeking to recover unpaid premiums allegedly due after a workers' compensation
insurance policy audit (the "Audit").  NYSIF and Hainesport have filed cross-motions for
summary judgment on Plaintiff's breach-of-contract and account-stated claims.  For the reasons
set forth below, Hainesport's motion is granted on the account-stated claim, and both parties'
motions are denied as to the breach-of-contract claim.  Hainesport's separate motion for summary
judgment against third-party defendant DJM Transport LLC ("DJM") is denied.

# BACKGROUND

## A.    Factual Background[1]

In New York, employers are generally liable for injuries to workers in the course of their employment, N.Y. WORKERS' COMP. LAW § 10(1), and unless employers meet self-insurance requirements, they must also obtain and keep in effect workers' compensation insurance to cover the cost of those payments, *id.* § 50.  "Out-of-state employers with employees working in New York State" are required to carry a New York workers' compensation insurance policy.  *Est. of Velasquez v. NGA Constr. Co.*, 977 N.Y.S.2d 423, 424 (3d Dep't 2013).  Employers may obtain insurance on the market from a private provider or NYSIF, a state agency run by the New York Department of Labor.  N.Y. WORKERS' COMP. LAW §§ 50, 76.

NYSIF issued Hainesport a workers' compensation policy covering the period from August 22, 2018, to April 27, 2019 (the "Policy Period").  Response to Commissioners of the State Insurance Fund's Statement of Undisputed Material Facts and Hainesport Transportation Group, LLC's Counterstatement of Material Facts at 2, Dkt. 70-1 ("Def.'s Rule 56.1 Counterstatement").  The policy covered "bodily injur[ies]" incurred by all employees, including non–New York employees, "while performing work within the State of New York."  Declaration of Karen M. Murray, Esq., Exhibit "A" at 4, Dkt. 70-3 (the "Hainesport Policy").[2]

In exchange for coverage, Hainesport paid premiums into NYSIF.  To derive the premium amount, NYSIF generally multiplies a rate corresponding with the job's risk level (the selection of which is not relevant here) by the premium basis.  *Id.* at 18.  The specifics are "determined by manuals of rules, rates, rating plans[,] and classifications" used by NYSIF.  *Id.*

---

[1] The facts in this section are taken from the parties' Rule 56.1 statements or relevant portions of the record and are undisputed unless otherwise noted.

[2] The cited pagination appears in the auto-generated ECF header.

Here, the applicable manual, the New York Manual for Workers' Compensation and Employer's Liability Insurance (the "Manual"), sets the premium basis—at least to an employer's covered employees—"based on the total remuneration paid by the employer for the services of employees who are eligible for New York State workers' compensation benefits." Declaration of Karen M. Murray, Esq., Exhibit "E" at 2, Dkt. 70-7[3]; *see* Def.'s Rule 56.1 Counterstatement at 6. In a separate rider, the Hainesport Policy specifies that the premium basis "includes the remuneration of [Hainesport's] employees hired outside the state of New York while they are performing work within the state of New York." Hainesport Policy at 2 (capitalization altered); *see* Def.'s Rule 56.1 Counterstatement at 7-8.

To enforce final premium calculations, NYSIF reserved the right in Part 4(H) of the Hainesport Policy to audit all "records that relate to th[e] policy whether these records pertain to the current policy period or to any previous policy period." Hainesport Policy at 19. However, NYSIF could conduct audits only "during regular business hours during the policy period and within three years after the policy period ends." *Id.*

Defendant cancelled the Hainesport Policy at the end of the term, on April 27, 2019. Plaintiff's Response and Counter-Statement of Material Facts Pursuant to Local Rule 56.1 (b) at 2, Dkt. 69-1 ("Pl.'s Rule 56.1 Statement"). Soon after, NYSIF began the Audit. Declaration in Support of Plaintiff's Cross-Motion for Summary Judgment ¶ 11, Dkt. 69-2 ("Kravatz Decl."). The Audit focused on two kinds of people who worked for Hainesport: the company's full-time employees and its subcontractors.

Regarding employees, Hainesport hired New Jersey drivers who sometimes traveled through New York. Def.'s Rule 56.1 Counterstatement at 17. During the Audit, Hainesport

---

[3] The cited pagination appears in the auto-generated ECF header.

indicated that its business records did not separate "gross income and expenses by state," Declaration of Karen M. Murray, Esq., Exhibit "C," Dkt. 70-5 ("May 27, 2022, Email"), so it could not calculate what portion of its payroll accounted for work within New York. Luckily, a "telematics system" on Hainesport's trucks measured their "distance and location." Def.'s Rule 56.1 Counterstatement at 12. So, Defendant offered auditor David Kravatz location data showing that its employees drove in New York for "8% of all miles" during the Policy Period. *Id.* The parties agreed to use this percentage to "allocate payroll in proportion to each state"—which would set the premium basis to eight percent of driver payroll. *See* Declaration of Karen M. Murray, Esq., Exhibit "D" at 5, Dkt. 70-6 ("Payroll Email Exchange"); Declaration of Karen M. Murray, Esq. ¶¶ 30–31, Dkt. 70-2 ("Feb. Murray Decl."). As Plaintiff saw it, this was "not standard operating procedure" but "an exception" granted by Plaintiff. Declaration in Reply to Opposition to Plaintiff's Cross Motion for Summary Judgment ¶ 15, Dkt. 71-1 ("Haile Decl.").

The Audit went less smoothly as to the third-party subcontractors. Under New York law, a company that hires a subcontractor without New York workers' compensation insurance generally must cover injuries to the subcontractor's workers in the course of their employment. N.Y. WORKERS' COMP. LAW § 56. Under Part 1(B) of the Hainesport Policy, NYSIF covenants to "pay promptly when due the benefits required of [Hainesport] by the Workers' Compensation Law." Hainesport Policy at 16. But coverage is not free. Part 4(D) of the Hainesport Policy states that the premium basis "includes payroll and all other remuneration" for all persons "engaged in work that could make [NYSIF] liable under Part One." *Id.* at 18.

Accordingly, the Manual requires policyholders to "furnish satisfactory evidence that the subcontractor had workers compensation insurance in force covering the work performed for the

contractor." Kravatz Decl., Exhibit "I," Dkt. 69-11 ("Rule IX").[4] Without such evidence, NYSIF increases premiums by applying the appropriate rate "to the entire payroll expended by the subcontractor for the subcontracted work." *Id.* Accordingly, policyholders must supply "complete payroll record[s] of the employees of each uninsured subcontractor." *Id.* If they could not—since those records belonged to subcontractors, not policyholders—NYSIF would peg the payroll amount for subcontracts involving "mobile equipment with operators" (the case here) at "33 1/3% of the subcontract price." *See id.* The Court refers to this policy as the "One-Third Rule."

At some point, NYSIF found out that Defendant's affiliate R & B Debris, LLC ("R & B"), a New Jersey company "under common ownership" with Defendant and covered by the Hainesport Policy, Declaration of Darryl S. Caplan ¶ 4, Dkt. 63-2; Kravatz Decl., Exhibit "B" at 19, Dkt. 69-4, had subcontracted with three New Jersey transportation companies: Doing It Right Technologies LLC ("DIRT"), DJM, and RTL Industries LLC ("RTL"), Plaintiff's Response to Defendant's Statement of Material Facts Pursuant to Local Rule 56.2 (b) ¶ 1, Dkt. 64-1; Declaration of Karen M. Murray, Esq. ¶ 6, Dkt. 63-4 ("Dec. Murray Decl."). After requesting their certificates of insurance in April 2022, Dec. Murray Decl. ¶ 13, NYSIF concluded that all three lacked New York workers' compensation insurance, *see* Kravatz Decl. ¶¶ 11, 13.

The parties agree that DIRT's policy apparently applied "only to the laws of the State of New Jersey." Declaration in Opposition to Defendant's Motion for Summary Judgment and in Further Support of Plaintiff's Cross-Motion for Summary Judgment ¶ 15, Dkt. 64-2 ("Campbell Decl."). However, according to Defendant's general counsel Karen Murray ("Murray"), when she called NYSIF about "how to confirm coverage," Murray was directed to call the New York

---

[4] NYSIF listed this Manual provision under Rule IX(c)(3)(b) until it was renumbered as Rule VIII in 2025. Declaration of Karen M. Murray, Esq., Exhibit "F," Dkt. 70-8. This Court will refer to the rule as "Rule IX," which was in effect during the events at hand.

Workers' Compensation Bureau ("NYBWC"), and learned from a representative that DIRT's coverage sufficed.  Feb. Murray Decl. ¶¶ 18–19.  RTL originally had New York workers' compensation insurance but allowed its policy to lapse.  Def.'s Rule 56.1 Counterstatement at 11.  Further, Defendant claims that DJM's insurer extended coverage for its employees to travel to "specific project locations in Brooklyn"—even if it lacked full coverage.  Hainesport's Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Summary Judgment at 21, Dkt. 70 ("Def.'s Opp'n"); Feb. Murray Decl. ¶ 20.

Another issue related to how to calculate Defendant's insurance premium, assuming the subcontractors lacked proper insurance.  Murray sent investigators a spreadsheet containing the "invoices" for "trips which included travel in" New York.  Payroll Email Exchange at 4.  In total, Defendant had paid the three contractors over three million dollars.  Campbell Decl. ¶ 16.  Thinking that figure represented the New York "portion of the payments," audit supervisor Denise Hunte used the three-million-dollar figure as the measure of Defendant's subcontract price.  Payroll Email Exchange at 3; Campbell Decl. ¶ 21.  Under this calculus, NYSIF would increase Defendant's premiums by the applicable rate, multiplied by 33 1/3 percent of roughly three million dollars.  *See, e.g.*, Kravatz Decl., Exhibit "L" at 4-5, Dkt. 69-14.[5]  The adjusted figure yielded at least a $209,344.87 premium increase.  Kravatz Decl., Exhibit "M" at 9, Dkt. 69-15.[6]

Murray objected and refused to pay, noting that the invoices represented payments to subcontractors for trips *involving* New York, not that the invoices represented payments for each mile *driven within* New York.  Payroll Email Exchange at 3.  The bulk of the miles driven—the work performed—occurred in New Jersey and Pennsylvania.  *Id.*  Believing that the plan to

---

[5] The cited pagination appears in the auto-generated ECF header.

[6] The cited pagination appears in the auto-generated ECF header.

apportion invoices as to Defendant's employees by state also applied to the subcontractors' employees, she attached a new spreadsheet which "allocate[d] the invoices of subcontractors" accordingly. *See id.* at 2. The new figure proposed using the insurer's audit of R & B's employees, which had determined that 5.3 percent of R & B's "mileage" occurred in New York. Haile Decl., Exhibit "A," Dkt. 71-16.

### B. Procedural History

NYSIF initially filed the complaint in the Supreme Court of the State of New York, Queens County, in December 2022. Defendant's Notice of Removal, Dkt. 1. Plaintiff advanced two claims: 1) breach of contract, alleging that Defendant breached the Hainesport Policy and owed them the unpaid premiums, collection costs, and fees, *see* Defendant's Notice of Removal, Exhibit "A" ¶¶ 4–9, Dkt. 1 (the "Complaint"); and 2) "account stated," alleging that Defendant accepted an account of prior transactions but breached its agreement to pay, *see id.* ¶¶ 10–13. The Complaint invokes a provision of New York Workers' Compensation Law stating that if a policyholder defaults on payments to the NYSIF, "the amount due from [the policyholder] shall be collected by civil action brought against him in any county wherein the state insurance fund maintains an office in the name of the commissioners of the state insurance fund." N.Y. WORKERS' COMP. LAW § 93(a); *see* Complaint ¶ 2. Defendant timely removed to the federal court, where the Court denied Plaintiff's motion to remand. *See* Memorandum and Order, Dkt. 27.

Defendant additionally filed a third-party complaint against DIRT, DJM, and RTL, alleging that the subcontractors fraudulently failed to obtain or maintain New York workers' compensation insurance. Amended Answer, Affirmative Defenses, Jury Demand and Third-Party Complaint ¶ 7, Dkt. 9. Defendant raised three claims: 1) breach of contract, 2) breach of the implied covenant of good faith and fair dealing, and 3) unjust enrichment. *Id.* ¶¶ 14–30. After discovery, Plaintiff and Defendant cross-moved for summary judgment. *See* Memorandum of Law

7

in Support of Hainesport Transportation Group, LLC's Motion for Summary Judgment, Dkt. 63 ("Def.'s MSJ"); Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment at 10, Dkt. 69 ("Pl.'s MSJ").[7] Defendant also moved for summary judgment against the third-party defendants.

Defendant also moved for summary judgment as a third-party plaintiff against DJM. *See* Def.'s MSJ at 11-15. The Court directed the parties to fully brief cross-motions for summary judgment by January 23, 2025. *See* Order, dated December 24, 2024. DJM, who appeared in this case, failed to oppose the motion. Hainesport Transportation Group, LLC's Memorandum of Law in Further Support of Its Motion for Summary Judgment at 9-10, Dkt. 65.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under governing law." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all reasonable factual inferences in favor of the non-movant. *See id.* A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[7] Plaintiff also moved for default judgment against DIRT and RTL, who did not appear. Memorandum of Law in Support of Hainesport Transportation Group, LLC's Motion for Default Judgment as to Liability Only Against Doing It Right Technologies LLC and RTL Industries LLC, Dkt. 66-1. However, Plaintiff withdrew the default judgment motions without prejudice to refiling after the resolution of the summary judgment motions. *See* Minute Entry, dated June 17, 2025.

When parties cross-move for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

When a party "fails to properly address" another party's assertions at summary judgment, the Court may "give an opportunity to properly support or address the fact"; "consider the fact undisputed"; or "grant summary judgment if the motion and supporting materials" show "that the movant is entitled it." FED. R. CIV. P. 56(e). The choice of remedy falls within the Court's discretion but should "encourage proper presentation of the record." 10A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2728 (4th ed. 2025) (quoting FED. R. CIV. P. 56 advisory committee's note to 2010 amendment). Even when the non-movant "chooses the perilous path of failing to submit a response to a summary judgment motion," the Court may not grant summary judgment unless the undisputed facts "show that the moving party is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (first quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001); then quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996) (per curiam)).

## DISCUSSION

### A. Breach-of-Contract Claim

Breach of contract under New York law, which the parties agree applies, consists of four elements: "(1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Wiener v. AXA Equitable Life Ins.*, 113 F.4th 201, 214 (2d Cir. 2024) (quoting *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011)). At issue is whether Plaintiff adequately performed by continuing to audit Defendant more than three years after the Hainesport Policy ended; whether Defendant's hiring RTL, DIRT, and DJM breached the Hainesport Policy; and whether Plaintiff may apply the One-Third Rule against R & B's three-

million-dollar invoice to the subcontractors, even though some of the work occurred outside New York.

Insurance policies, including policies for workers' compensation, are subject to ordinary principles of contract interpretation. *In re Estates of Covert*, 761 N.E.2d 571, 576 (N.Y. 2001); *Comm'rs of State Ins. Fund v. Photocircuits Corp.*, 798 N.Y.S.2d 367, 372 (1st Dep't 2005). They "are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense." *Covert*, 761 N.E.2d at 576-77 (quoting *Hartol Prods. Corp. v. Prudential Ins. Co. of Am.*, 47 N.E.2d 687, 689 (N.Y. 1943)). The Court "should accord that language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish." *Palmieri v. Allstate Ins.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)).

Ambiguity in a policy exists "when—after it is viewed objectively—more than one meaning may reasonably be ascribed to the language used." *Id.* When the contract contains a patent or latent ambiguity, the Court should deny summary judgment so that "relevant extrinsic evidence should be admitted and considered by the factfinder to resolve" the ambiguous provisions. *Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 396 (2d Cir. 2023). But if extrinsic evidence could not resolve the ambiguity, and the contract remains ambiguous after using "all other available tools" at its disposal, the Court must construe the term against the insurer. *Id.*; *Ment Bros. Iron Works Co. v. Interstate Fire & Cas.*, 702 F.3d 118, 124 (2d Cir. 2012).[8]

---

[8] In a footnote, Defendant contends that Plaintiff "sued the wrong entity as Hainesport is not a contract signatory." Def.'s MSJ at 2 n.2. But Defendant adduces no evidence that it did not sign the Hainesport Policy. By contrast, the policy documents suggest that Defendant, as the "Insured," signed a singular policy covering itself and R & B. Kravatz Decl., Exhibit "B" at 18-19, Dkt. 69-4. Indeed, Plaintiff applied for a single NYSIF policy and listed R & B as an "additional business[]" to be covered. Kravatz Decl., Exhibit "A" at 3, Dkt. 69-3. On this admittedly light record, Defendant has not shown, as a matter of law, that there is an "absence of evidence to support" Plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

**1. Audit Timing**

Part 4(H) of the Hainesport Policy states:

We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends.  Information developed by audit will be used to determine final premium.  Insurance rate service organizations have the same rights we have under this provision.

Hainesport Policy at 19.

At issue is whether Plaintiff's right to "conduct" an audit requires the audit to commence by April 27, 2022, or complete by April 27, 2022.  If the latter, then Plaintiff breached the provision by sending Murray additional requests after that date.  *See, e.g.*, Feb. Murray Decl. ¶ 26, May 27, 2022, Email; Payroll Email Exchange.  A plain reading of the Hainesport Policy favors the latter interpretation, in other words, that Plaintiff breached the contract.

To "conduct" means to "direct, manage," or "carry on" a process.  *Conduct*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/conduct_v (last visited Dec. 4, 2025).  The Hainesport Policy permits Plaintiff to direct, manage, or carry on the "audit"—in its business sense, an evaluation "of the effectiveness of the management, working practices, and procedures of a company or other professional body."  *Audit*, Oxford English Dictionary, https://www.oed.com/dictionary/audit_n (last visited Dec. 4, 2025).  Therefore, Plaintiff may direct, manage, or carry on an investigation of Defendant's business only until April 27, 2022.  *See* Hainesport Policy at 19.  Doing so after that date breaches the time limit.  Nothing in the text suggests that "conduct" means to "begin (an action)"—the role of "commence."  *Commence*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/commence_v (last visited Dec. 4, 2025).

To be sure, New York courts have found ambiguity in similar terms as to whether the "commencement or completion of the audit is required to satisfy the time limitation[s]."  *See, e.g.*, *Grattan v. Dep't of Soc. Servs.*, 521 N.Y.S.2d 162, 164 (3d Dep't 1987) (finding regulation

requiring reports "subject to audit for a period of six years" ambiguous on its own as to whether audit must complete, or commence, within relevant period); *Clearview Ctr., Inc. v. N.Y. State Off. of the Medicaid Inspector Gen.*, 100 N.Y.S.3d 724, 726-27 (3d Dep't 2019). But the text of those regulations—that certain reports are "subject to audit"—differs from the contractual text limiting when a party may conduct an audit. Those regulations, unlike this one, also expressly stated that auditors may "conclud[e] an audit already begun." *Id.* at 727 (quoting 18 N.Y. COMP. CODES R. & REGS. tit. 18, § 517.3(d) (2025)).

Even if Defendant is right, the Hainesport Policy is at best ambiguous. Without extrinsic evidence indicating that "conduct" means something else, *State v. Home Indem. Co.*, 486 N.E.2d 827, 829 (N.Y. 1985), the Court construes the provision against the insurer as a matter of law, *Ezrasons*, 89 F.4th at 402-03. Hence, under either interpretation, Plaintiff breached the time limit on its audits.

However, Defendant does not address the breach's consequences. Under New York law, a breach-of-contract claim requires "adequate performance by the plaintiff," *Wiener*, 113 F.4th at 214, so a party who materially breaches a contract excuses the counterparty from performance, *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 117 (2d Cir. 2006). But a non-material breach entitles the other party to "damages for the breach," not to "treat the contract as at an end." *Id.* at 117–18. A breach is material if it "substantially defeats the purpose of that contract," *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997)—a question of fact in this Circuit, *Orlander v. Staples, Inc.*, 802 F.3d 289, 298 (2d Cir. 2015). Because neither party adduces evidence or arguments with respect to materiality, neither party has met its burden to show "no genuine dispute" on this issue, FED. R. CIV. P. 56(a). Thus, neither party is entitled to summary judgment with respect to whether Plaintiff materially breached the contract.

### 2. Subcontractor Coverage

As set forth above, under Part 4(D) of the Hainesport Policy, the premium basis includes payroll for all "persons engaged in work that would make [Plaintiff] liable under" Part One, and under Part One, Plaintiff is liable for any benefits that New York's Workers' Compensation Law requires Defendant to pay. Hainesport Policy at 16, 18. Under New York law, a contractor like Defendant must pay benefits for the employees of its subcontractors. N.Y. WORKERS' COMP. LAW § 56. To calculate the premium basis, the parties look to the Manual, which requires the contractor to "furnish satisfactory evidence that the subcontractor had workers compensation insurance in force covering the work performed for the contractor." Rule IX; Hainesport Policy at 16. At issue is whether Defendant offered satisfactory evidence that RTL, DIRT, and DJM possessed insurance for their work in New York.

It is undisputed that Defendant failed to offer satisfactory evidence as to RTL and DIRT. The parties agree that RTL allowed its policy "to cancel or lapse," Def.'s Rule 56.1 Counterstatement at 11, so its policy was not in force during the Policy Period within the meaning of the Manual. Defendant's response—that RTL had valid insurance when Defendant *received* the Hainesport Policy—does not establish that the evidence of insurance was "satisfactory" during the Audit. Rule IX. The Hainesport Policy confirms the Manual. Part 4(D) states that premiums will not increase if there is proof "which [the insurer] deem[s] sufficient to establish" that the insured has "lawfully secured [its] workers' compensation obligations." Hainesport Policy at 18. By the time of the Audit, Plaintiff could, in good faith, no longer find Defendant's records sufficient to establish coverage.

Similarly, DIRT lacked coverage for work performed in New York. Under Plaintiff's theory, the Employers' Handbook to Workers' Compensation in New York State requires certain

out-of-state employers with subcontractors working in New York to carry a "full, statutory New York State workers' compensation insurance policy," which would be listed on Item 3A of the policy's "Information Page." Kravatz Decl., Exhibit "E" at 46, Dkt. 69-7 (the "Handbook").[9] But the Information Page on DIRT's policy showed in "Item 3[A]" that it applied "only to the laws of the State of New Jersey." Kravatz Decl. ¶ 12; Kravatz Decl., Exhibit "F," Dkt. 69-8. Murray's response—that NYSIF advised her to call the NYBWC, where a representative advised her that "DIRT's coverage was indeed sufficient," Feb. Murray Decl. ¶ 19—does not clarify whether Plaintiff knew if DIRT's insurance covered New York projects or if Plaintiff was bound by the representative's statements. Therefore, a reasonable jury could not conclude that DIRT offered satisfactory evidence of insurance when Plaintiff chose to increase premiums. No genuine dispute exists as to liability because Defendant failed to pay those premiums for DIRT's and RTL's employees. *See Umbach v. Carrington Inv. Partners (US), LP*, 851 F.3d 147, 157 (2d Cir. 2017).

Defendant insists that it "diligently worked to confirm that the subcontractors had appropriate" coverage. Def.'s Opp'n at 20. But Defendant fails to explain why a diligent effort establishes "satisfactory proof," which typically requires a good-faith insurer to be genuinely satisfied by the evidence offered. *Cf. Lehigh Structural Steel Co. v. Great Lakes Constr. Co.*, 72 F.2d 229, 231 (2d Cir. 1934) (interpreting a "satisfactory proof" requirement to require genuine satisfaction on the recipient's part). A reasonable jury could therefore not conclude that Defendant's diligence changed the premium-calculation formula.

However, a genuine dispute exists as to whether DJM possessed adequate insurance. Plaintiff's auditor attested that DJM "did not have any New York State workers compensation

---

[9] NYBWC amended this requirement in 2011 to permit lower coverage for qualifying out-of-state employers. Subject Number 045-454, N.Y. STATE WORKERS COMPENSATION BD. (Nov. 23, 2010), https://www.wcb.ny.gov/content/main/SubjectNos/sn046_454.jsp. But Defendant does not argue that DIRT qualified.

insurance," though the insurer's information page is not in the record.  Kravatz Decl. ¶ 11.  So, a jury could credit the view that DJM lacked "any New York State workers compensation insurance."  Campbell Decl. ¶ 14.  Defendant proffers by Murray's affidavit that she "received certificates of insurance" detailing "proper insurance," which approved DJM drivers to travel to job sites in New York.  Dec. Murray Decl. ¶¶ 12, 20.  The certificates expressly covered "Workers Compensation and Employers' Liability" for workers traveling to select New York project locations between July 2018 to July 2019.  *See* Def.'s MSJ, Exhibit "A" at 18-33, Dkt. 63-3.[10] While an employer has full coverage in New York "when New York is listed in Item '3A' on the Information Page of" an insurer's policy, Plaintiff makes no argument that that is the *only* way to secure coverage in New York.  Handbook at 46.  Construing the facts in a light most favorable to Defendant, a juror could also credit Defendant's view that it offered satisfactory evidence that DJM possessed full New York workers' compensation insurance in this manner.  *See id.*

Because Defendant breached by failing to pay for increased premiums as to two subcontractors, NYSIF's motion for summary judgment is granted as to liability for breach of contract.  However, Plaintiff's motion for summary judgment is denied as to the proper calculation of damages, which depends on whether the premium basis should also account for DJM's employees.  Defendant's cross-motion for summary judgment, as well as its motion as a third-party plaintiff against DJM, are also denied.  A reasonable jury could find (as Defendant argues in response to Plaintiff's cross-motion) that DJM "had appropriate workers' compensation insurance."  Def.'s Rule 56.1 Counterstatement at 3.  Accordingly, the Court declines to also hold that a reasonable jury *must* find that DJM failed to "procure adequate workers' compensation insurance" in violation of its own contracts.  Def.'s MSJ at 12–13.

---

[10] The cited pagination appears in the auto-generated ECF header.

### 3. Damages Calculation

At issue is the One-Third Rule.  If an employer cannot furnish "satisfactory evidence" that the subcontractor possessed workers' compensation insurance, then the premium increases by the appropriate rate applied to "the entire payroll expended by the subcontractor for the subcontracted work."  Rule IX.  Policyholders must submit "complete payroll record[s] of the employees of each uninsured contractor"; if they "do[] not" (as Defendant does not), then "33 1/3% of the subcontract price shall be considered payroll."  *Id.*  Plaintiff argues that "subcontract price" unambiguously means the sticker price on the contract that encompasses qualifying work in New York, even if the price pays for work outside New York, because that is the best proxy for New York payroll and the only number Defendant gave.  Pl.'s MSJ at 6–7; Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Further Support of Plaintiff's Cross-Motion for Summary Judgment at 10, Dkt. 64 ("Pl.'s Opp'n").  Defendant argues that the Hainesport Policy covers only work in New York, so Plaintiff must *first* apportion payroll for compensation to subcontractors for New York work before dividing it by three.  Def.'s MSJ at 5–9.

The provision is ambiguous on its face.  A subcontract is a type of "contract," in other words, an "agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law."  *Contract*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see Subcontract*, BLACK'S LAW DICTIONARY (12th ed. 2024).  A broad view favors Plaintiff: "subcontract price" reasonably means the price listed on the written agreements between R & B and its subcontractors—even if it paid for work outside the scope of Plaintiff's policy.  That accords with a reasonable conception of the One-Third Rule: assigning the cost of retrieving payroll records to Defendant, who is best positioned to harangue its subcontractors for records.  Indeed, the parties knew how to narrow the term.  An express endorsement states that "premium basis" includes the "remuneration of [Defendant's] employees hired outside the State of New York

16

while they are performing work within" it.  Hainesport Policy at 2 (capitalization altered).  They did not so specify for subcontractors—plausibly suggesting that the parties intended "subcontract price" to govern them broadly.  *Cf. Sterling Inv. Servs., Inc. v. 1155 Nobo Assocs.*, 818 N.Y.S.2d 513, 516 (2d Dep't 2006) (applying *expressio unius* canon to contracts).  In this way, the One-Third Rule minimizes the costs of isolating New York payroll.

But the parties could also reasonably interpret "subcontract price" with its neighbors to encompass only work in New York.  Endorsement 127 of the Policy clarifies that it "does not cover claims for benefits filed under any other state's laws," suggesting that the insurer extends benefits to out-of-state contractors only to the extent they work in New York.  Hainesport Policy at 4.  The "reasonable expectation of the averaged insured," which guides contract interpretation, *Dean v. Tower Ins. Co. of N.Y.*, 979 N.E.2d 1143, 1145 (N.Y. 2012), expects that a "premium is always based upon a calculation of the anticipated cost of providing" it, *Rhine v. N.Y. Life Ins.*, 6 N.E.2d 74, 79 (N.Y. 1936).  Here, the anticipated cost reflects the reality that New York courts sometimes apply New York Workers' Compensation Law to the claims of out-of-state workers injured in New York.  *See, e.g.*, *Velasquez*, 977 N.Y.S.2d at 423-24.  This favors interpreting "subcontract price" to mean the price for labor that would expose Plaintiff to risk—here, work performed by out-of-state subcontractors in New York.

Part 4(D) of the Hainesport Policy supports this reading.  It ties premium basis to "payroll and all other remuneration payable during the policy period for the services of":

> all other persons engaged in work that could make us liable under Part One . . . of this policy.  If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis.

Hainesport Policy at 18.  Part 4(D)'s "services of . . . work that could make us liable" reasonably refers only to the work that could make Plaintiff liable for "benefits required of [Defendant] by the

Workers' Compensation Law" under Part 1(B). *Id.* at 16, 18. By those lights, Part 4(D)'s "contract price for [the subcontractors' employees'] services" reasonably refers to the price of services performed in New York. *Id.* at 18.

This is also consistent with the One-Third Rule, which does not apply if Plaintiff learns mid-audit that "a definite amount of the subcontract price represents payroll" but makes no similar caveat for geographic discoveries—thereby implying that any geographical constraints are already accounted for. Rule IX. And while a third might reasonably reflect a business's payroll costs, nothing indicates that average contractors earn a third of their income from New York. That reasonably suggests that the Manual's use of "subcontract price" estimates the payroll portion of a subcontract—*assuming* the subcontract pays for work in New York.

Because a reasonable trier of fact faced with the extrinsic evidence could resolve the ambiguity for either party, neither party is entitled to summary judgment. *Ezrasons*, 89 F.4th at 396. The "[c]onduct of the parties provides" an "important source for deriving their intent." *N.Y. Marine & Gen. Ins. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 119 (2d Cir. 2010) (quoting *Am. Home Prods. Corp. v. Liberty Mut. Ins.*, 565 F. Supp. 1485, 1503 (S.D.N.Y. 1983), *aff'd*, 748 F.2d 760 (2d Cir. 1984)). A reasonable factfinder, drawing inferences for Defendant, could conclude the parties understood that "subcontract price," at its apex, referred to payments for work with *some* connection to New York. Here, no evidence suggests that Plaintiff asked for R & B's *actual subcontracts*. Instead, Murray attached a "Summary of Transporter Payments" that identified the three-million-dollar *subset* of compensation for "trips which included travel in NY State." Haile Decl., Exhibit "G," Dkt. 71-8; Haile Decl., Exhibit "H," Dkt. 71-9; Def.'s MSJ at 5. Because even Plaintiff accepted the three-million-dollar invoices—for trips that passed through New York,

rather than all trips—a finder of fact could conclude that "subcontract price" contained an implicit geographical limitation.

Conversely, a reasonable juror could conclude that the parties understood "subcontract price" to mean the invoice listed on the subcontracts, and the three-million-dollar figure as its best estimate. According to NYSIF audit manager Benyam Haile, the parties' agreement to apportion payroll for Defendant's employees was a rare "exception"—suggesting that policyholders rarely isolated employee payroll costs by state. Haile Decl. ¶ 15. Indeed, when Haile emailed Murray about Defendant's subsidiary R & B, he noted in one paragraph that Defendant could attach a "Distance Traveled Report" for its own "drivers/helpers" and in a separate paragraph that Defendant needed to provide "the amount paid to each" subcontractor during the "audit periods." May 27, 2022, Email. A reasonable juror could also find that the parties' exchange, and Defendant's failure to estimate how many miles its subcontractors drove in New York, suggests that the parties understood "subcontract price" broadly. *See* Kravatz Decl. ¶¶ 13–14. At the same time, the parties could understand the exchange as Plaintiff's fault—to make "no effort whatsoever to separate out New York subcontract work" despite needing to do so. Def.'s Opp'n at 8. Accordingly, a genuine dispute exists as to the measure of damages.

Plaintiff responds that because Defendant failed to provide information regarding the total mileage for the subcontractors in New York, it should bear the costs in the form of the $3,000,000 premium basis. Pl.'s MSJ at 5-6. The parties dispute whether Defendant negligently failed to provide accurate state-by-state breakdowns of its subcontractors' employees, *see id.*, or whether Plaintiff negligently failed to ask for apportioned subcontractor invoices, Def.'s Opp'n at 12-13, but neither party explains why the negligence establishes a right to summary judgment. In a New York contract dispute, the measure of damages is the economic equivalent of the benefit of the

bargain. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 248 (2d Cir. 2000). Because a reasonable factfinder could conclude, on the one hand, that the bargain demanded Defendant to produce subcontractor payroll records or suffer a default determination under the One-Third Rule or, on the other hand, that the bargain demanded Plaintiff to sift for which dollars paid for labor performed in New York, both parties' summary judgment motions are denied.

Plaintiff's accounting of its state-court victories does not help it. In *Commissioners of the State Insurance Fund v. Allou Distributors, Inc.*, 632 N.Y.S.2d 5, 5 (1st Dep't 1995), and *Commissioners of the State Insurance Fund v. Z Builders Associates*, 219 N.Y.S.3d 71, 71-72 (1st Dep't 2024), New York courts awarded Plaintiff summary judgment because it showed a *prima facie* entitlement to premiums that the defendants failed to adequately dispute. Neither opinion identifies the content of the records or the Hainesport Policy provisions at issue there, so neither party explains how they apply to the contested issue of contract interpretation here.

To the extent that Plaintiff asserts that Defendant is "in [b]reach of [c]ontract" because it failed to file a written appeal of the audit results, Pl.'s Opp'n at 13; Pl.'s Rule 56.1 Statement at 10, Plaintiff does not identify a provision that provides that a written appeal is the *exclusive* remedy for its objection. Under the Hainesport Policy, a policyholder "may appeal the application of a rule or procedure" in the Manual, including the results of "premium audits." Hainesport Policy at 20. But Plaintiff adduces no evidence that failing to appeal concedes the estimate of premiums in a later suit by the insurer. Indeed, New York courts have held that "if sued by the State Insurance Fund for unpaid premiums, [the policyholder] could challenge the Fund's calculation of the premium by raising that issue as a defense in that action." *Di Pietro v. State Ins. Fund*, 619 N.Y.S.2d 456, 459 (4th Dep't 1994) (citing *Comm'rs of State Ins. Fund v. Fox Run Farms*, 600 N.Y.S.2d 239, 241 (1st Dep't 1993)). Even assuming that it did, any appeal requirement "applies

only where a party seeks to challenge the rate in excess of the rate established by the Workers'
Compensation Insurance Rating Board"—but not to the distinct question as to "the payroll figure
relied upon . . . in calculating the premium." *Di Pietro*, 619 N.Y.S.2d at 458. Because Defendant
challenges Plaintiff's payroll figures only, its failure to appeal does not require this Court to
interpret "subcontract price" expansively.

While Defendant insists that the provision stating that the premium basis includes "the
remuneration of your employees hired outside the State of New York while they are performing
work within" New York *unambiguously* limits the range of the "subcontract price," Def.'s Opp'n
at 16 (capitalization altered), that text applies to Defendant's employees, not its subcontractors.
The parties do not explain what happens if a policyholder has insufficient payroll records for its
employees, and their arguments do not render unreasonable Plaintiff's contention that the One-
Third Rule supplies a rough proxy for calculating payroll for subcontractors.

Because a rational trier of fact could find for either party as to the correct measure of
damages under the contract, both parties' motions for summary judgment are denied as to
Plaintiff's breach-of-contract claim.

**B. Account-Stated Claim**

"An account stated is an express or implied agreement between parties to an account based
on prior transactions between them." *First Bank & Tr. v. Coventina Constr. Corp.*, 18-cv-6648
(NGG) (VMS), 2019 WL 4120363, at *4 (E.D.N.Y. July 23, 2019), *report and recommendation
adopted*, 2019 WL 4089393 (E.D.N.Y. Aug. 26, 2019). To prove a breach, a plaintiff must show
that "(i) an account was presented; (ii) the account was accepted as correct; and (iii) the debtor
promised to pay the amount stated." *Id.* "There can be no account stated where . . . any dispute
about the account is shown to have existed." *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679
F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (quoting *Abbott, Duncan & Wiener v. Ragusa*, 625 N.Y.S.2d

178, 178 (1st Dep't 1995)).  "While a plaintiff typically may pursue a claim for both account stated and breach of contract, it may not do so 'simply as another means to attempt to collect under a disputed contract.'"  *Anhui Joyful Mfg. & Trading Co. v. M.I.S.S. Sportswear, Inc.*, 774 F. Supp. 3d 675, 687 (S.D.N.Y. 2025) (quoting *Martin H. Bauman Assocs., Inc. v. H & M Int'l Transp.*, 567 N.Y.S.2d 404, 409 (1st Dep't 1991)).

Plaintiff fails to establish that Defendant accepted or promised the invoiced amount. Defendant contends that it rejected NYSIF's invoice, maintained that it was incorrect, and refused to pay the amount stated.  *See* Feb. Murray Decl. ¶ 55.  Indeed, Murray wrote to NYSIF that R & B "continues to contest the determination that certain subcontractors did not provide adequate proof of insurance," as well as the "appropriate billable amount."  Haile Decl., Exhibit "A" at 2, Dkt. 71-16.  That is why Plaintiff's account-stated claim mirrors its breach-of-contract claim, *see* Defendant's Notice of Removal ¶ 3, Dkt. 1; Pl.'s MSJ (choosing not to brief this claim).  Therefore, Defendant's motion for summary judgment on the account-stated claim is granted, and Plaintiff's motion for summary judgment on this claim is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted as to the account-stated claim.  Both parties' summary judgment motions are denied as to Plaintiff's breach-of-contract claim.  Plaintiff's motion for summary judgment against third-party defendant DJM is denied.

SO ORDERED.

_/s/_____
ORELIA E. MERCHANT
United States District Judge

Dated: January 28, 2026
      Brooklyn, New York